## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

A.B.,

     Plaintiff,

v.

                               Case No. 2:23-cv-00023-JMB-MV

                               Hon. Jane M. Beckering

KILIAN MANAGEMENT
SERVICES, Inc., a Wisconsin Corporation;
BRANDON PORTER, an individual,

     Defendants.

| | |
|---|---|
| Jennifer B. Salvatore (P66640) | Joseph Starr (P47253) |
| David L. Fegley (P85275) | Zeth D. Hearld (P79725) |
| Jessica Lieberman (P68957) | STARR, BUTLER, ALEXOPOULOS & |
| SALVATORE PRESCOTT | STONER, PLLC |
| PORTER & PORTER PLLC | *Attorneys for Defendant Kilian Management* |
| *Attorneys for Plaintiff* | *Services, Inc.* |
| 105 East Main Street | 20700 Civic Center Drive, Ste. 290 |
| Northville, MI 48167 | Southfield, Michigan 48076 |
| (248) 679-8711 | (248) 554-2700 |
| salvatore@sppplaw.com | jstarr@starrbutler.com |
| fegley@sppplaw.com | zhearld@starrbutler.com |
| lieberman@sppplaw.com | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

     Plaintiff A.B, by and through her attorneys, SALVATORE PRESCOTT PORTER &

PORTER, submits this First Amended Complaint and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff A.B. is a resident of Wisconsin who worked at a McDonald's franchise in Iron Mountain, Michigan located in the Western District of Michigan. The franchise is owned by Defendant Kilian Management Services.

2.      Defendant Kilian Management Services, Inc., is a Wisconsin corporation with its principal place of business in West Bend, Wisconsin.  Defendant Kilian owns and operates franchises throughout Michigan's Upper Peninsula and Wisconsin.

3.      Defendant Brandon Porter is an individual who, at all relevant times resided in the Upper Peninsula of Michigan within the Western District and worked as an employee of Defendant Kilian Management Services, Inc. and Plaintiff's supervisor.

4.      The alleged violations forming the basis of this action occurred in Dickinson County, Michigan, which is within the Western District of Michigan.

5.      Claims in this action are for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq., negligent hiring, and for assault and battery under Michigan law.

6.      This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

7.      Venue is appropriate under 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

8.      This case involves the sexual harassment and assault of a sixteen-year-old girl employed in her first job at McDonald's. She was harassed and assaulted by a thirty-six-year-old

man who was hired to be her supervisor. The assault and harassment occurred at work in full view of other supervisory personnel.

9.      Plaintiff A.B. was sixteen years old when, in October of 2021, she began working at the McDonald's restaurant in Iron Mountain, Michigan. This McDonald's franchise is owned by Defendant Kilian Management Services ("Kilian").

10.      Plaintiff has a history of social anxiety, due to which she began homeschooling during the ninth grade.

11.      Plaintiff was a strong student and was invited to join the National Honors Society due to her academic achievement.

12.      The McDonald's position was Plaintiff's first job and, until the incidents in question, she greatly enjoyed it, getting along well with her coworkers and management.

13.      Plaintiff's social anxiety began to subside over the first several months of her employment there.

14.      On or around February 21, 2022, Defendant Brandon Porter applied for a job at the Iron Mountain, Michigan McDonald's restaurant where Plaintiff worked.

15.      Following an in-person interview, Defendant Kilian Management Services used BackgroundChecks.Com to run a background check on Brandon Porter.

16.      The background check yielded a result showing no criminal history and Porter was offered, and accepted, a position as a crew member at the Iron Mountain, Michigan McDonald's.

17.      But the background check performed on Mr. Porter was deeply flawed, as Defendant Kilian knew or should have known.

18.      As staffing shortages were rampant and Kilian's was struggling to maintain a work force, Kilian opted to use BackgroundCheck.com's "US OneSearch" product to receive instant

results which expedited the hiring process–even though the public-facing product page for "US OneSearch" expressly warns users that it does not include any local county court records.

19.     And BackgroundCheck.Com's public coverage map webpage expressly warns users in red ink that for Dickinson County, where the Iron Mountain McDonald's is located, "[w]e do not have sufficient records for this county in our database. We recommend that you add a traditional, direct county courthouse search."

20.     Yet Defendant Kilian did not conduct any traditional, direct county courthouse searches when it ran a background check on Mr. Porter, despite knowing that Porter would be working alongside teenagers and high school students, if hired.

21.     Instead, it utilized the flawed "US Onesearch"--which returned "instant" background check reports literally in seconds. This choice allowed employees like Porter to be hired the same day they were interviewed.

22.     Had Defendant Kilian conducted a proper background check, it would have learned of Mr. Porter's extensive and escalating criminal history, including three domestic violence/assault convictions, a malicious destruction of a building conviction and a drunk and disorderly conduct and a drunk and disorderly conduct charge related to an incident from just two months prior.

23.     Indeed, unbeknownst to Kilian, Porter was in the local courthouse pleading guilty to a drunk and disorderly conduct charge on the same day that he began his first shift at McDonald's.

24.     Willfully ignorant then of Porter's criminal history, Defendant Kilian hired Porter as a crew member.

25.     On or around February 25, 2022, Plaintiff began working with Defendant Brandon Porter.

26.    Within a few weeks, Porter was placed on a managerial track, where he was given supervisory authority and responsibilities over his co-workers, many of whom were teenagers or young adults.

27.    Kilian hired Porter to supervise minors, despite the fact that he had been in and out of court for domestic violence, assault, and various alcohol-related offenses for over a decade.

28.    While he was still in training as a manager, Defendant Porter immediately presented himself to A.B. and her coworkers as being in charge, calling himself their manager and telling other employees that they had to listen to him.

29.    Even during his training, Porter controlled many aspects of the employees' routines, such as what position they worked at and whether or when they could eat meals during their shift.

30.    Almost as soon as he met A.B, Mr. Porter began making sexually suggestive comments to her, including telling her that he wished she were 18 years old.

31.    A.B. immediately reported Porter's comments to her manager, A.R., who was responsible for training Porter.

32.    Porter also directed sexual comments at another minor employee, referred to herein as Jane Doe.

33.    On or around March 23, 2022, Jane Doe and A.B. were in the cooler at work discussing Porter's inappropriate conduct.  Jane Doe informed A.B. that she had also reported Mr. Porter's conduct to A.R.

34.    Although two employees reported Mr. Porter's sexual harassment to her, A.R. took no action in response to A.B.'s and Jane Doe's reports.

35.    On the contrary, A.R. continued to train Porter as a manager.

36.    A.B. and her coworkers observed as A.R. trained Porter to "do everything up front" – an area of the restaurant requiring managerial oversight.

37.    Moreover, after A.B.'s report to A.R., she observed Porter informing other employees at various times that he was "in charge," that he had a bigger role than another employee, and thus that he didn't "have to listen" to her.

38.    On or around March 28, 2022, A.B. was at work and preparing to have her dinner. She required a manager's thumbprint at the cash register to complete her purchase.

39.    Mr. Porter walked up to provide his thumbprint – something only managers or managers-in-training have authority to do. As he did so, Porter stated to A.B., "I would like to finger you, but because of your age I can't, so right now I'll just give you a thumb."

40.    A.B. was very distressed by Porter's overtly sexual comment.

41.    The following day, March 29, 2022, Mr. Porter sexually assaulted A.B. at work.

42.    Present on site were A.B., Jane Doe, two other employees (one of whom was also training as a manager), and manager A.R.

43.    Shortly after A.B. began her shift, Porter proceeded to touch her body without her consent, rubbing her arms, shoulders, and lower back, grabbing her around the hips, and pulling on her shirt to untuck it.

44.    A.B. repeatedly asked Porter to stop and tried to get away from him, but he followed her around the facility, continuing to touch her and pressing his body against hers including pushing his penis against her.

45.    Porter repeatedly asked A.B. to go into the back with him, telling her that she would "enjoy" it and that he would make her feel "happier" and "better."

46.    This conduct—unwanted touching and comments—went on for two hours.

47.    For the duration of this time, manager A.R. was present, as was another manager-in-training.

48.    Both A.R. and the other manager-in-training witnessed the assault and harassment as they were occurring.

49.    In fact, A.R. had almost immediate knowledge that Porter was behaving in a grossly inappropriate way when at the beginning of his shift, he told A.R. that she should "flick [A.B.'s] bean" a crude suggestion that Porter wanted A.R. (his manager) to masturbate the teenage A.B.

50.    A.R. did not send Porter home after this comment. Instead, A.R. repeatedly lamented to A.B. and to Jane Doe that she had no idea what to do in response to Porter's conduct.

51.    A.R. failed to take any effective steps to make Porter stop.

52.    Due to A.R.'s failure to take effective steps or actions, Porter continued to sexually harass and assault A.B. in this manner.

53.    The harassment and assault continued until Jane Doe – whose father is a local undersheriff – called her family for help.

54.    Porter only stopped assaulting and harassing A.B. when the police arrived.

55.    The moment the police arrived, A.B. retreated to the bathroom, falling to the floor in a panicked state and laboring to breathe. Indeed, A.B. had a full-blown panic attack as a result of Porter's conduct–experiencing physical symptoms such as an inability to breathe.

56.    After some time passed, an officer retrieved the emergency contact number A.B. had on file and contacted A.B.'s father, J.B.

57.    A.B. remained on the bathroom floor until an officer encouraged her to come out of the bathroom and attempted to calm her as she awaited her parents' arrival.

58.     The police subsequently determined that Mr. Porter was under the influence of

drugs and/or alcohol on the evening of the assault.

59.     Within minutes of arriving at the scene, police also ran a LEIN/NCIC search via

dispatch and confirmed that Mr. Porter was, per the police report, "still on bond through our

county" related to his recent drunk and disorderly conduct offense.

60.     Porter was questioned, at which time he informed the police that he had been

working as a manager at Defendant's establishment during the events in question.

61.     On or around March 30, 2022, the day after the above incident, A.B.'s father, J.B.,

contacted Defendant Kilian to discuss the incident and to find out whether a background check

had been run on Defendant Porter.

62.     J.B. was informed by Kilian employee Kristin D'Agostino (the person who had

originally hired A.B.) that she had personally conducted Porter's background check.

63.     On the following day, a Kilian's HR representative told J.B. that she did not know

how Porter "fell through the cracks" when Kilian hired him.

64.     Mr. Porter was subsequently charged with criminal sexual conduct. Via a plea deal

he was convicted of aggravated assault in Dickinson County.

65.     On July 11, 2022, the sentencing judge, Julie A. LaCost, admonished Mr. Porter

for assaulting and harassing the minor employees over whom he had been placed in charge.

66.     Judge LaCost noted that Porter had been, "taken out of the criminal sexual conduct

realm by the plea agreement that was entered into, and this was filed, refiled, or transferred to an

aggravated assault."

67.     The judge went on, "So you're not going to be required to be registering [on the

sex offender registry], which is a huge benefit for you. No employer likes to see that. But as I look

at this, Mr. Porter, I see an OUIL in '07, that's what, fifteen years ago, you were twenty-one years old, and it's been nonstop since then with three domestic violences, I'm fairly certain that alcohol was probably involved in those… So, Mr. Porter, something's got to change or you're going to find yourself in prison or worse, I don't know. What's it going to take? Wiping out a whole family? This isn't devastating enough to do this to two young girls that were not just young women but under your employ. You were their role model. You were their supervisor. You were the position of authority. You've ruined that. You've destroyed that trust. Own it. Wear it. Change it. That's all I can say."

68.    The Judge sentenced Mr. Porter to 180 days in jail.

69.    Mr. Porter's conduct would be highly distressing to any woman but was even more so to A.B., a sixteen-year-old girl with a history of social anxiety.

70.    In fact, A.B.'s parents had encouraged Plaintiff to work at McDonald's hoping that it would help her anxiety by providing her an opportunity to engage with others in a positive environment.

71.    Up until the events in question, the job was a good experience for A.B.

72.    Never could A.B.'s parents have anticipated that their daughter would be sexually assaulted at work – no less by a 36-year-old man hired as a manager despite being in and out of court on domestic violence and other charges.

73.    As a result of Kilian's conduct, A.B. experienced difficulty sleeping, concentrating on school, and performing normal tasks of daily living.

74.    In the aftermath of the March 29, 2022 assault, A.B. suffered from haunting nightmares and repeated panic attacks where she felt she couldn't breathe or move.

75.     Approximately two months after the incident, Plaintiff had to go to urgent care due to brain fog and memory issues; her panic attacks were so severe at the time that one day she woke up and couldn't remember anything.

76.     She also suffered multiple panic attacks while working at her subsequent job months later; once because she saw a customer who resembled Mr. Porter and once because she saw one of her former co-workers from McDonald's.

77.     A National Honor Society member, A.B. fell behind academically.

78.     She also was unable to maintain subsequent employment where she had to work around or with men.

79.     To alleviate her physical symptoms of anxiety and PTSD, A.B. was prescribed Ativan for the first time in her life and has regularly been seeing a counselor.

80.     A.B.'s emotional distress and physical health issues stemming from the assault has been extreme and ongoing.

81.     Despite the significant harm done to A.B. and another female minor employee, and even in the face of litigation and publicity over its flawed background check process, Kilian failed to address the obvious flaws in its hiring process.   To date, Kilian continues to use BackgroundChecks.com as its exclusive background checks vendor.

82.     Kilian HR personnel testified that the Company has not investigated alternative vendors, nor has it supplemented its current approach to include county courthouse searches for criminal records of prospective employees.

83.     As such, Kilian continues to willfully ignore whether it is employing at its dozens of locations individuals with violent criminal histories.

## COUNT I
### TITLE VII
### SEX DISCRIMINATION - HOSTILE WORK ENVIRONMENT
#### (Against Defendant Kilian Management Services, Inc.)

84.   Plaintiff hereby incorporates all preceding paragraphs.

85.   Plaintiff is a member of a protected group and was subjected, based on her sex, to unwelcome sexual communications and conduct based on gender.

86.   Mr. Porter's sexual and gendered communications were severe and pervasive, substantially interfered with Plaintiff's employment, and created a hostile and offensive work environment.

87.   The hostile work environment was created by a supervisory employee and, therefore, Defendant Kilian Management Services is vicariously liable for the conduct, regardless of whether Kilian had knowledge of the harassment.

88.   Nonetheless, Defendant Kilian Management Services knew or should have known of Defendant Porter's discriminatory conduct, because it was reported to management multiple times and because of Porter's criminal background, which Kilian apparently failed to investigate prior to hiring him.

89.   As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages including lost wages and benefits, mental anguish, physical and emotional distress, humiliation, and embarrassment.

90.   Plaintiff filed a charge with the EEOC and on January 20, 2023 received a right to sue letter from the Agency, allowing her to bring suit under Title VII.

## COUNT II
## ELLIOTT-LARSEN CIVIL RIGHTS ACT
## SEX DISCRIMINATION - HOSTILE WORK ENVIRONMENT
### (Against Defendants Kilian Management Services, Inc., and Brandon Porter)

91.     Plaintiff hereby incorporates all preceding paragraphs.

92.     Plaintiff was an employee of Defendant Kilian Management Services and was covered by and within the meaning of the Elliott-Larsen Civil Rights Act.

93.     Plaintiff was subjected to conduct of an offensive and overtly sexual nature when she was harassed by Defendant Porter, a supervisory employee with and agent of Defendant Kilian Management Services.

94.     Defendant Porter's conduct was unwelcome; and it was specifically on the basis of Plaintiff's sex and/or was sexual in nature. The conduct was sufficiently severe that it constituted a hostile work environment.

95.     Defendant Porter's conduct constitutes sex harassment in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2701 *et seq*.

96.     Defendant Kilian Management Services was on notice of Defendant Porter's discriminatory conduct because it was reported to management by two employees and because of his criminal background which included, among other things, alleged incidents of domestic violence—of which Kilian knew or should have known.

97.     The actions of the Defendants and their agents were negligent or intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

98.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

99.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained damages including lost wages and benefits, mental anguish, physical and emotional distress, humiliation, and embarrassment.

**COUNT III**
**ASSAULT AND BATTERY**
**(Against Defendant Brandon Porter)**

100.    Plaintiff hereby incorporates all preceding paragraphs.

101.    Defendant Porter subjected Plaintiff to a well-founded apprehension of unwanted imminent contact, coupled with the apparent present ability to accomplish the contact.

102.    Defendant Porter subjected Plaintiff to willful and harmful or offensive touching as set forth above.

103.    The touching resulted from acts intended to cause such contact.

104.    Plaintiff did not consent to this willful, harmful, and offensive touching.

105.    Indeed, prior to his sentencing on July 11, 2022, Defendant Porter pled guilty to criminal aggravated assault, the elements of which are: 1) an assault, 2) without a weapon, 3) a battery causing serious or aggravated injury, and 4) a specific intent to injure or put the victim in reasonable fear of an immediate battery. Therefore, liability on the civil assault claim has already been established by virtue of his plea on this criminal offense stemming from the same facts.

106.    As a direct and proximate result of Defendant Porter's actions, Plaintiff has sustained injuries and damages including, but not limited to, mental and emotional distress and physical health issues, including anxiety, fear, stress, shock, mental anguish, self-blame, humiliation, embarrassment, loss of the sense of security, and the loss of the ordinary pleasures of everyday life.

<u>**COUNT IV**</u>
**NEGLIGENT HIRING**
**(Against Defendant Kilian Management Services, Inc.)**

107.    Plaintiff hereby incorporates all preceding paragraphs.

108.    Defendant Kilian Management Services, Inc. had a duty to exercise reasonable care in the hiring of its employees.

109.    That duty was heightened in this case, given the employer-employee "special relationship" between Plaintiff and Defendant, and the fact that as a 16-year-old minor, Plaintiff was particularly vulnerable to unwanted sexual advances and harassment.

110.    Defendant knew of this special duty and was well aware that its workforce skewed young; Defendant's workforce included a significant number of high school students and other teenagers.

111.    Likewise, Defendant was on notice of the problem of sexual harassment amongst the McDonald's workforce: The McDonald's corporate headquarters had recently unveiled nationwide standards and procedures intended to combat the epidemic of workplace sexual harassment that was rampant in its restaurants.

112.    Defendant breached its duty to Plaintiff when it hired Brandon Porter.

113.    Defendant's cursory "background check" of Mr. Porter was performed in willful and reckless disregard of the fact that the "US OneSearch" product it was utilizing for "instant" background checks was advertised as not including criminal records from the very counties where Kilian's businesses were located.

114.    Defendant knowingly ignored the background check vendor's prominent warnings that the search, which did not include any county courthouse records, was insufficient.

14

115.    When Defendant Kilian hired Brandon Porter, it knew or should have known that he had a propensity for violence and alcohol abuse and a criminal record demonstrating a history of violence.

116.    Defendant Kilian knew or should have known that given Porter's history of violence and violent propensity, he was prone to harass and/or assault fellow employees.

117.    Given his criminal history and, specifically, his three domestic violence convictions, Porter was unfit to work with vulnerable young co-workers.

118.    A reasonable employer would not have hired Porter, recognizing that he would create an unreasonable risk of harm to others.

119.    The injuries that Plaintiff ultimately suffered would have been foreseeable to a person of ordinary prudence in the employer's position.

120.    As a direct and proximate result of Defendant's conduct in hiring Porter, Plaintiff has sustained damages including lost wages and benefits, mental anguish, physical and emotional distress, humiliation, and embarrassment.

121.    To date, Defendant Kilian continues to employ the same insufficient background check procedures on new prospective employees, further demonstrating that its conduct is deliberate and/or intentional.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

   a.   economic and non-economic damages;

   b.   attorney fees and costs;

   c.   punitive damages;

d.  injunctive relief in the form of a court order requiring Defendant Kilian to modify its

background check procedures to properly screen for criminal offenses in the counties in

which it operates, and;

e.  all other legal and equitable relief determined by the Court to be appropriate.


Respectfully Submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
David L. Fegley (P85275)
Jessica Lieberman (P68957)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplaw.com
fegley@spplaw.com

Dated:    November 14, 2023

## JURY DEMAND

Plaintiff demands a trial by jury in the above-captioned matter.

Respectfully Submitted,

Dated: November 14, 2023

Jennifer B. Salvatore (P66640)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@sppplaw.com

17