UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

A.B.,

    Plaintiff,

v.

KILIAN MANAGEMENT SERVICES, INC.
and BRANDON PORTER,

    Defendants.
_____/

Case No. 2:23-cv-23

HON. JANE M. BECKERING

## MEMORANDUM OPINION AND ORDER

Now pending before the Court in this Title VII case is Plaintiff's unopposed Motion for Partial Summary Judgment (ECF No. 79).  For the following reasons, the Court grants the motion.

### I.  BACKGROUND

This case concerns workplace sexual harassment and assault.  Plaintiff,[1] then 16 years' old, worked at a McDonald's franchise in Iron Mountain, Michigan.  The franchise is owned by Defendant Kilian Management Services (Kilian).  Defendant Brandon Porter, then 36 years' old, worked at the same franchise with Plaintiff.  Following Defendant Porter's conduct against Plaintiff on March 29, 2022, Defendant Porter was charged with criminal sexual conduct.  He subsequently pleaded guilty and was convicted of aggravated assault.

Plaintiff initiated this case on January 31, 2023, with the filing of a Complaint against Defendants Killian and Porter (ECF No. 1).  Plaintiff served Porter with the Complaint on February

---

[1] The parties stipulated to Plaintiff proceeding under pseudonymous status (Order, ECF No. 8).

16, 2023, and he failed to file an answer or otherwise defend the action. As a result, an entry of default was entered against him by this Court on April 6, 2023 (ECF No. 17 at PageID.82).

Approximately one year later, on January 18, 2024, Plaintiff filed a First Amended Complaint, alleging the following four claims:

    I.    Title VII; Sex Discrimination—Hostile Work Environment (against Defendant Killian Management Services, Inc.)

    II.    Elliott-Larsen Civil Rights Act Sex Discrimination—Hostile Work Environment (against Defendants Killian Management Services, Inc. and Brandon Porter)

    III.    Assault and Battery (against Defendant Brandon Porter)

    IV.    Negligent Hiring (against Defendant Killian Management Services, Inc.)

(ECF No. 68). Defendant Kilian filed an Answer (ECF No. 73).

On March 29, 2024, Plaintiff filed this Motion for Partial Summary Judgment (ECF No. 79), seeking judgment as a matter of law in her favor on Killian's liability on Count II. Pursuant to this Court's local rules, Defendant Killian had 28 days in which to file a response. *See* W.D. Mich. LCivR 7.2(c) ("Unless otherwise ordered, any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."). To date, no response has been filed. Having considered Plaintiff's submission, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

A party may move for summary judgment, identifying each claim on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." *Id.* In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In responding to a summary judgment motion, the plaintiff can no longer rest on "mere allegations" but must "set forth" by affidavit or other evidence "specific facts" necessary to support the claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The function of the court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson*, 477 U.S. at 251–52).

A district court "abuses its discretion when it grants summary judgment solely because the non-moving party has failed to respond to the motion within the applicable time limit." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005). "When a non-moving party fails to respond, … the district court must, at a minimum, examine the moving party's motion for

3

summary judgment to ensure that it has discharged its initial burden." *Id.* However, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). If the non-moving party fails to discharge its burden by "remaining silent," then "its opportunity is waived and its case wagered." *Id.*

### B. Discussion

Plaintiff seeks summary judgment on liability, only, on Count II, which is her Title VII hostile work environment claim against Defendant Kilian. She argues that there is little dispute about what happened on the evening of March 29, 2022, and she attaches a plethora of exhibits to her motion—police records, witness statements, contemporaneous interviews and extensive deposition testimony—that she asserts "paint a vivid picture of Porter's misconduct" (ECF No. 79 at PageID.771). Plaintiff also points out that Porter's criminal conviction as well as his default in this case means that Kilian is estopped from re-litigating the fact of Porter's aggravated assault of Plaintiff (*id.*). According to Plaintiff, the severity of Porter's actions is sufficient to establish a hostile work environment as a matter of law, with only the matter of the respondeat superior issue remaining to establish Defendant Kilian's liability under Title VII (*id.* at PageID.765, 771).

Under Title VII, an employer is vicariously liable for sexual harassment perpetrated by a manager. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (holding that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee"); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005) (holding that the defendant "would be automatically liable for the alleged hostile work environment created by [the harasser]

4

because he was the manager of the entire Claims Department where [the plaintiffs] worked, and therefore had supervisory authority over them").

For purposes of vicarious liability, a "supervisor" is someone "empowered" to take "tangible employment actions against the victim," such as hiring and firing. *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). Vicarious liability also attaches when the aggrieved employee reasonably believed that the harasser had supervisory authority over her. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (noting that employer liability still attaches in situations where "there is a false impression that the actor was a supervisor, when he in fact was not," and the victim's misunderstanding was "reasonable"). *See, e.g., Wright v. AutoZone Stores, Inc.*, 951 F. Supp. 2d 973, 991 (W.D. Mich. 2013) (finding vicarious employer liability based on the harasser's apparent authority to promote and terminate employees, although he likely lacked actual authority to do so).

Here, Plaintiff argues that regardless of whether Defendant Porter was, in fact, a supervisor with the capacity to hire and fire employees, Plaintiff, then a 16-year-old working one of her first jobs, reasonably perceived that Porter was a manager at the time of the assault. Plaintiff herself testified that "[Porter] would always say to the [young employees] . . . he was in charge, and he was going to be our boss . . . that he was essentially in charge and that everything depended on him, like we could depend on him for everything" (Pl. Ex. 8, A.B. Dep. at 109, ECF No. 79-9 at PageID.824). Plaintiff also identifies the following evidence in the record to support the reasonableness of her belief that Porter was a supervisor with authority to take tangible employment actions against her:

- The police report following the assault, memorializing that "Porter also stated that he was a manager-in-training. When I asked if that meant that he was a 'boss' over the employees that were on the shift, he advised me that he was a 'boss.'" (Pl. Ex. 15, ECF No. 79-16 at PageID.851).

5

- Porter's sentencing judge referred to Porter's supervisory role at the McDonald's, telling him, "[t]his isn't devastating enough to do this to two young girls that were not just young women but under your employ. You were their role model. You were their supervisor. You were [in] the position of authority. You've ruined that. You've destroyed that trust.  Own it. Wear it. Change it. That's all I can say" (Pl. Ex. 2, ECF No. 79-3 at PageID.799).

- On March 19, 2022, Porter was upgraded internally within McDonald's data system, earning a promotion from Code 650 ("Crew Person") to Code 647 ("Certified Swing Mgr.)" (Pl. Ex. 14, ECF No. 79-15 at PageID.844).

- Defendant Kilian entrusted Porter with "thumbprint access" to the store's cash registers, meaning that he enjoyed clear and unmistakable authority that Plaintiff and her fellow crew members lacked. *See* Pl. Ex. 13, Wendorf Dep. at 69–71, ECF No. 79-14 at PageID.841–842.  Specifically, thumbprint access provided Porter with the power to comp meals and provide employee discounts, a power that all crew members knew about and relied upon from managers at every shift.

- A.M., Plaintiff's fellow minor coworker (now a manager herself), testified: "He actually—as a manager-in-training, he wouldn't actually have authority over me, but at the time, I'm not sure that I even knew that" (Pl. Ex. 12, A.M. Dep. at 53, ECF No. 79-13 at PageID.838).

- A.M. hesitated to report Porter's conduct on the night of the incident because she was "worried that considering his higher status in the restaurant, his word would be taken before mine" (Pl. Ex. 11, A.M. Statement, ECF No. 79-12 at PageID.835).

- Porter's own supervisor testified that based on what Porter was telling people, even she was unsure about his status. *See* Pl. Ex. 3, Rundell Dep. at 54, ECF No. 79-4 at PageID.808 ("Brandon kept saying that he was a manager in training.  I didn't treat him any differently. But he was telling everyone he was a manager in training, and I didn't know if that was false or true. So, I just kind of let him keep saying it.").

The Court determines that Plaintiff has borne her evidentiary burden on the issue of vicarious liability and concomitantly on Defendant Kilian's liability on Count II, leaving only the issue of damages under Title VII for the jury to decide.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's unopposed Motion for Partial Summary Judgment (ECF No. 79) is GRANTED.

Dated:  May 9, 2024                                  /s/ Jane M. Beckering
                                                                      JANE M. BECKERING
                                                                      United States District Judge